## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **14-00802-jw**

## ORDER CONFIRMING CHAPTER 11 PLAN AND DENYING DEBTOR'S MOTION TO COMPEL WITHOUT PREJUDICE

The relief set forth on the following pages, for a total of 33 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**01/12/2015**



*John E Waites* (signature)

US Bankruptcy Judge
District of South Carolina

Entered: 01/13/2015

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 14-00802-JW |
| | Chapter 11 |
| TREE OF LIFE CHURCH, | **ORDER** |
| Debtor(s). | |

This matter is before the Court on (1) confirmation of Debtor's August 1, 2014 amended Chapter 11 plan, as modified by Debtor's Addendum to Amended Plan of Reorganization, filed October 15, 2014; and (2) Debtor's Motion to Compel Creditor Sun Circle, Inc. ("Sun Circle") to aid in the consummation of a sale previously approved by this Court. Sun Circle has filed three separate objections to the confirmation of Debtor's proposed Chapter 11 plan but, to date, has not filed a written response to Debtor's Motion to Compel. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

1.      Debtor is a tax-exempt, non-profit religious corporation that was incorporated under the laws of South Carolina on April 11, 1994 by Pastor Elaine Green, who continues to serve in that position. According to her testimony, Pastor Green does not and has never taken a salary or living expenses from Debtor; she serves on a voluntary basis. Debtor has no corporate members and its primary activity is the operation of a church. Debtor also operates a day care for the benefit of church members and the

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

community, and, in 2013, Debtor began a revenue-generating summer camp outreach, which it repeated in 2014.  Debtor also began offering a year-round after-school program to generate additional revenues in 2014 and intends to continue the program in coming years.

2.    Debtor's church services are held at two locations: (1) Myrtle Beach, from leased property; and (2) North Charleston, from real property comprised of approximately 5.5 acres acquired by Debtor on April 21, 2004 ("N. Charleston Property").  Additionally, there is a billboard on Debtor's North Charleston property for which Debtor negotiated a long-term lease to Adams Outdoor Advertising ("Adams").  The billboard lease generates annual revenues for Debtor of $6,000.00.  Debtor also owns unencumbered real property on Otranto Road in North Charleston ("Otranto Property") with an estimated value of $330,000.00.

3.    On November 1, 2010, Debtor executed a Note in favor of Regions Bank requiring Debtor to make monthly payments of $9,461.51 beginning on December 15, 2010 with "the final payment . . . due on November 15, 2014 . . . ."  The Note is secured by a Mortgage on the N. Charleston Property.  The Note and Mortgage were later assigned to Alabama Capital, LLC.

4.    Debtor's operations are funded by tithes and offerings from its members and guests and the billboard lease plus, in recent years, profits generated by the day care, summer camps, after-school program, and various fundraisers.  As of January 2014, the active membership at Debtor's North Charleston location was 151 "giving units" and the active membership at Debtor's Myrtle Beach location was 86 "giving units." A giving

unit is defined as a member who actively attends, financially supports, and participates in the ministries of the church.

5.    On February 11, 2014, Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.   Debtor's Schedules and Statements were filed shortly thereafter on February 14, 2014.   Since filing, Debtor has remained in possession of its property and continued in its operations.   The following circumstances preceded Debtor's filing:

    a.   On May 30, 2013, a state foreclosure action was commenced on Debtor's N. Charleston Property by Alabama Capital, LLC, Sun Circle's predecessor in interest.[2]   The foreclosure complaint alleges Debtor's default under the terms of the Note and shows the Mortgage's principal balance as $1,007,032.31 with interest, plus costs and attorneys' fees. Alabama Capital, LLC also reserved a deficiency claim.

    b.   On February 4, 2014, a receiver was appointed by Alabama Capital, LLC through an order entered in the foreclosure case.

    c.   Upon Debtor's filing for Chapter 11 bankruptcy on February 11, 2014, the imposition of the automatic stay effectively ended the receivership.   To date, the N. Charleston Property remains in Debtor's possession and under its control.

---

[2] Sun Circle became the holder of the Mortgage by assignment on October 15, 2013.   Proof of this assignment as well as each prior assignment is attached as exhibits to Sun Circle's Proof of Claim filed April 9, 2014.

**Debtor's Creditors**

6.    In its Schedules, Debtor lists debts owed to the following creditors:

a.    Alabama Capital, LLC, as a secured creditor and holder of the Note secured by the Mortgage on Debtor's N. Charleston Property;

b.    Pastor Green, as an unsecured creditor to be reimbursed for an advance paid to Debtor's first attorney in this case for his retainer and consulting fee;

c.    Charleston County Treasurer, as a creditor holding tax claims for past-due personal property taxes for 2012 and 2014 and vehicle taxes for 2007, 2012, and 2013; and

d.    DeMott Law Firm ("the Law Firm"), as an unsecured creditor owed fees and costs for prior representation.[3]

7.    On April 2, 2014, Charleston County Revenue Collections ("CCRC") filed a Proof of Claim in the amount of $6,911.85, listing "Taxes and Fees" as its basis. CCRC's Proof of Claim sets forth a secured claim for past-due business personal taxes in the amount of $1,902.66 and an unsecured claim entitled to priority under 11 U.S.C. § 507(a)(8) in the amount of $5,099.19.[4]  Presumably, CCRC's claims arise from those which Debtor lists as owed to the Charleston County Treasurer.

8.    On April 9, 2014, Sun Circle, as successor in interest to Alabama Capital, LLC, filed a Proof of Claim in the amount of $1,140,347.48 plus 5.55% interest, listing "Note and Mortgage of Property" as its basis.  Sun Circle's Proof of Claim sets forth a

---

[3] The advance paid by Pastor Green was not for services provided by the Law Firm. Rather, Pastor Green provided funds to a separate attorney who assisted Debtor in earlier phases of this case; he was not and is not affiliated with the Law Firm listed in Debtor's Schedules.

[4] These two components of CCRC's claim total $7,001.85. However, the total amount of the claim, as expressly stated in CCRC's Proof of Claim, is $6,911.85.

4

secured real estate claim, perfected through proper recordation of the Mortgage, and values Debtor's N. Charleston Property at $750,000.00.[5]

### Debtor's Motion to Sell & Motion to Compel

9.    On June 17, 2014, Debtor filed its Motion to Sell to Landmark Dividend, LLC ("Landmark") a ninety-nine year easement of one side of the billboard located on Debtor's N. Charleston Property.  Debtor also filed a Notice and Application to Sell which provided for the closing documents necessary for the sale's consummation to be executed within thirty days of the Court's approval of the sale[6] and set July 8, 2014 as the deadline to file objections to the sale.

10.    On July 8, 2014, Adams—a leaseholder for the land on which the billboard is located—filed a limited objection to Debtor's Motion to Sell.  As lessee of the portion of Debtor's N. Charleston Property where the billboard is erected, Adams consented to the entry of an order granting Debtor's Motion to Sell only if such an order (1) acknowledged Adams' interests under its lease agreement with Debtor; and (2) incorporated the lease agreement into its terms.  Adams was the only party to object to Debtor's Motion to Sell.

11.    On July 23, 2014, after a hearing on Debtor's Motion to Sell, the Court entered a consent order provided by Adams and Debtor which granted the Motion to Sell and incorporated the lease agreement between Adams and Debtor ("Sale Order").  The Sale Order, in pertinent part: (1) notes that Debtor intends to assume the lease to Adams underlying the billboard; (2) authorizes Debtor's sale to Landmark of a ninety-nine year

---

[5] As further discussed in note 6, *infra*, Debtor and Sun Circle later stipulated to value the N. Charleston Property at $920,000.00.

[6] The Non-Disturbance Agreement, discussed further below, was not expressly referenced in Debtor's Motion, Notice, or Application.

easement of Debtor's interest in one side of the billboard; (3) sets the sale price at $42,800.00 with $38,000.00 of that amount to be paid directly to Sun Circle, the mortgagee of the N. Charleston Property; and (4) orders the annual lease payments from Adams of $6,000.00 to be divided equally between Landmark and Debtor, including any future increases in the lease amount as provided by the lease's escalation provision.

12.    After entry of the Sale Order, Landmark informed Debtor that to consummate the sale, a separate agreement needed to be signed by Sun Circle, as the mortgagee of the N. Charleston Property where the billboard is located ("Non-Disturbance Agreement"). According to Debtor, the purpose of the Non-Disturbance Agreement is to ensure that Landmark's interest in one side of the billboard is properly perfected in the event the N. Charleston Property is sold to a third-party by Debtor or Sun Circle.  Debtor forwarded the Non-Disturbance Agreement to Sun Circle but, to date, Sun Circle declines to execute it.

13.    On October 13, 2014, Debtor filed its Motion to Compel seeking an order from this Court compelling Sun Circle to assent to the Non-Disturbance Agreement thereby allowing for execution of the terms set forth in the Sale Order, including payment to Sun Circle of a portion of the sale price.  Debtor asserts that execution of the Non-Disturbance Agreement is in the best interest of Sun Circle, because it will allow the sale to be completed and, thus, provide Sun Circle with a sum of $38,000.00 paid to it by Debtor from sale proceeds.  Upon agreement of the parties, Debtor's Motion to Compel was considered along with confirmation of Debtor's proposed Chapter 11 Plan of Reorganization and approval of its Disclosure Statement at a hearing set for October 15, 2014, as discussed further below.

**Debtor's Plan of Reorganization & Sun Circle's Objections to Confirmation**

14.    On June 26, 2014, Debtor filed a proposed Chapter 11 Plan of Reorganization, Disclosure Statement, and motion for a combined hearing on the confirmation of the plan and approval of the Disclosure Statement.  The following day, the Court entered an order conditionally approving Debtor's Disclosure Statement and granting Debtor's motion to combine the hearings.

15.    On August 4, 2014, Sun Circle filed an objection to confirmation of Debtor's June 26th filed plan.  In this first objection, Sun Circle argues that Debtor's plan, as proposed at that time, (1) was not fair and equitable, as required by 11 U.S.C. § 1129(b)(2); (2) did "not state anything with regard to Sun Circle['s] lien status," as required by 11 U.S.C. § 1129(b)(2)(A)(i)(I); and (3) could not meet the feasibility requirement of 11 U.S.C. § 1129(a)(11).

16.    On August 1, 2014, Debtor filed an amended plan of reorganization to clarify certain plan components based upon arguments set forth in an objection to confirmation filed by the United States Trustee ("UST") on July 29, 2014.  Debtor's filing of its amended plan resolved the UST's objection.[7]

17.    On September 16, 2014, in response to Debtor's August 1st amended plan, Sun Circle filed a second objection to confirmation, setting forth arguments similar to those advanced in its first objection filed on August 4th and elaborates further on Sun Circle's position as to the feasibility of Debtor's plan, even as amended, due to a purported deficiency between Debtor's monthly income and monthly creditor payments.

---

[7] The UST also objected to approval of Debtor's Disclosure Statement.  Debtor thereafter amended its Disclosure Statement based in part upon the arguments made by the UST in its objection.  As discussed further herein, Debtor's Disclosure Statement was approved by order of this Court on October 20, 2014.

18.    On October 1, 2014, a hearing was held on the confirmation of Debtor's August 1 amended plan and approval of Debtor's Disclosure Statement.  At the hearing, a witness for Sun Circle provided testimony in support of Sun Circle's first and second objections to confirmation and offered an opinion on terms of plan treatment which Sun Circle would consider commercially reasonable with respect to its claims.  Thereafter, the hearing was continued to October 15, 2014 at which time the Court would consider all outstanding matters related to confirmation.[8]

19.    On October 15, 2014, a combined hearing was held on the confirmation of Debtor's August 1 amended plan, Sun Circle's objections, approval of Debtor's Disclosure Statement, and Debtor's Motion to Compel.  At the hearing, Debtor submitted an addendum to its August 1 amended plan containing terms adopted in response to evidence presented by a witness for Sun Circle at the previous hearing (collectively, "Plan").  Sun Circle concedes that the terms of the addendum, while not as favorable to Sun Circle as the terms of the original Note, are commercially reasonable according to its own witness's testimony as provided on October 1, 2014.

20.    Near the conclusion of the October 15, 2014 hearing, despite having filed no written objection to confirmation, an attorney for the UST questioned whether Debtor would be capable of achieving confirmation of its Plan over Sun Circle's objections in light of certain Fourth Circuit precedent regarding unsecured tax claimants.  Although the UST declined to become involved in the confirmation dispute between Sun Circle and Debtor, the attorney for the UST raised the issue of whether CCRC could be considered an "impaired class" capable of accepting Debtor's Plan and thereby allowing Debtor to

---

[8] The hearing was continued to October 15, 2014 in light of Pastor Green's absence from the October 1st hearing due to personal illness.

achieve "cram down" confirmation over Sun Circle's objections.[9]  Prior to the comments

provided on behalf of the UST, Sun Circle had not advanced such a position, orally or in

writing, as a basis for its objections.  However, at the time of the hearing, Sun Circle

sought to adopt the comments provided by the attorney for the UST regarding CCRC's

status as a tax claimant.

21.    Debtor's Plan, as updated by Debtor's addendum, includes the following

proposed classes of claims and treatment terms:

Class 1, CCRC's secured claim and unsecured priority claim:

- Debtor shall tender monthly payments of $129.00 or more, plus interest at

   a rate of 4.5%, until its total claim is paid in full; and

- Monthly installments to CCRC and/or other eligible governmental claims

   shall be paid over a period not exceeding five years from the date of

   confirmation.

Class 2, Sun Circle's secured claim:

- Pursuant to 11 U.S.C. § 506, Debtor moves to establish the value of Sun

   Circle's lien at $920,000.00;[10]

- Debtor shall maintain insurance on its N. Charleston Property;

---

[9] The Court surmises that the comments provided by the attorney for the UST are related to a similar issue which was under consideration in a separate case in this District at the time of the October 15, 2014 hearing in the instant case. The resulting order from the separate case is discussed and distinguished further below.

[10] On May 28, 2014, Sun Circle filed a motion for relief from stay requesting that it either be permitted by to immediately proceed to foreclose its interest in Debtor's N. Charleston Property or, in the alternative, receive an order from the Court requiring adequate protection of Sun Circle's interest during the pendency of Debtor's Chapter 11 case.  On June 25, 2014, a hearing was held on Sun Circle's motion during which Sun Circle agreed to the amount of $920,000.00 as the value of the N. Charleston Property.  Sun Circle's motion for relief was resolved via consent settlement order entered by this Court on August 4, 2014, which required Debtor to: (1) file its Disclosure Statement, Plan of Reorganization, and motion to combine hearings within five days; (2) grant Sun Circle an additional replacement lien on the N. Charleston property; (3) make monthly adequate protection payments to Sun Circle in the amount of $3,400.00, commencing on June 25, 2014; and (4) make a lump sum payment to Sun Circle in the amount of $20,000.00 on or before July 31, 2014.  At the time of the October 15, 2014 combined hearing, Debtor remained in compliance with this settlement order's terms.

- Debtor shall tender a sum of $38,000.00 to Sun Circle upon the consummation of the sale of the billboard easement as approved in the Sale Order;

- The sum of $20,000.00 tendered to Sun Circle by Debtor as an adequate protection payment in accordance with a prior settlement order shall be applied to reduce Sun Circle's secured claim;

- Thirty days after the effective date of Debtor's Plan, Sun Circle will begin receiving monthly payments in the amount of $3,986.00, representing only interest owed on the Note at the rate of 5.55%[11] on the balance of Sun Circle's secured claim after application of the monies tendered in accordance with the Sale Order and prior settlement order;

- Debtor shall tender a sum of $250,000.00 to Sun Circle from the sale of its unencumbered Otranto Property, which is valued at $330,000.00 and was under contract to be sold at the time of the addendum;[12]

- After Sun Circle receives and applies to its claim its portion of the proceeds from the sale of the Otranto Property, Debtor will continue to pay Sun Circle monthly payments of $3,986.00, to be applied to the Note's principal and interest, for a period of forty-eight months, at the

---

[11] This is an increase of 1.05% from the rate proposed under Debtor's plan prior to the October 15th addendum.

[12] At the time of the October 15, 2014 hearing, counsel for Sun Circle stated that the possible sale of the Otranto Property contained too many contingencies to persuade Sun Circle to withdraw its objections to Debtor's Plan. After the hearing, on October 24, 2014, Debtor filed a Motion to Sell Free and Clear of Liens with respect to the Otranto Property, which was granted by this Court on November 24, 2014. The Court's order allowing for the sale free and clear of liens states that the consideration to be paid for the sale is $330,000.00 and requires that $250,000.00 of that sum be paid to Sun Circle upon confirmation of Debtor's Plan.

conclusion of which any outstanding principal balance on Sun Circle's secured claim, plus any accruals, shall become payable in full; and

- In the event the remaining principal balance on Sun Circle's secured claim, plus any accruals, is not paid within the aforementioned forty-eight months, Sun Circle shall be entitled to exercise its state court remedies of foreclosure, as stated in the Note and Mortgage.

Class 3, executory contracts and unexpired leases:[13]

- Debtor will assume its two unexpired leases;

- Debtor will assume three existing month-to-month executory contracts; and

- Debtor will reject one executory agreement.

Class 4, the Law Firm's unsecured claim, as a convenience class:

- Debtor shall tender a lump sum payment in the amount of $500.00, without interest, in full satisfaction of the Class 4 obligation.

Class 5, Sun Circle's unsecured claim:

- Debtor shall tender monthly payments in the amount of $1,224.00, without interest, continuing for a period of one hundred-eighty months until Sun Circle is paid the full amount of the undersecured portion of its claim; and

- To the extent Debtor obtains financing to satisfy the matured obligation to Sun Circle contained in Class 2, Debtor shall tender any available loan proceeds in excess of the balance owed on the Class 2 secured claim at the time of financing to reduce the Class 5 claim.

---

[13] The treatment of Class 3 is not germane to either Sun Circle's Objections or Debtor's Motion to Compel.

Class 6, monies owed to Pastor Green:

- Debtor shall pay monies owed to Pastor Green in full after the satisfaction of all other obligations set forth in the Plan.

22.    Debtor's Plan specifies that each class listed above is "impaired" pursuant to 11 U.S.C. § 1124(a)(1).  Additionally, Class 6 is the only class specifically designated as incapable of voting to accept Debtor's Plan due to the insider status of Pastor Green, its sole member.

23.    On October 20, 2014, the Court granted final approval of Debtor's Disclosure Statement over Sun Circle's objections.

24.    Since the comments provided by the UST regarding classification, impairment, and voting ability of CCRC and its tax claims arose without prior notice to the Court, on November 6, 2014 the Court issued an order requiring further argument on the issues surrounding confirmation of Debtor's Plan.

25.    On November 10, 2014, in advance of further hearing on confirmation, Sun Circle filed a Supplemental Objection to Confirmation of Debtor's Plan in which it sought to formally adopt the UST's comments from the October 15th hearing.  The arguments set forth in Sun Circle's first, second, and supplemental objections (collectively, "Objections") are considered and discussed together below.

## CONCLUSIONS OF LAW

I.    **Sun Circle's Objections to Confirmation of Debtor's Proposed Chapter 11 Plan of Reorganization**

Pursuant to 11 U.S.C. § 1123(a)(1),[14] Chapter 11 debtors proposing reorganization plans must classify their creditors' claims and interests.  Upon classification, Chapter 11 debtors must specify whether the treatment provided for each class results in "impairment" of the claims and interests within.  § 1123(a)(2)–(3). Proposed plans must also specifically designate which classes are "not impaired." *Id.* The Bankruptcy Code provides that "a class of claims or interests is impaired under a plan unless . . . the plan . . . leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest . . . ." § 1124(a)(1).  Where a proposed Chapter 11 plan impairs one or more classes of claims, the debtor "must obtain the acceptance of an impaired class of claims as a necessary precondition to confirmation . . . ."  *In re Dunes Hotels Assocs.*, 188 B.R. 174, 183 (Bankr. D.S.C. 1995); *see also* § 1129(a)(10) ("The court shall confirm a plan only if . . . at least one class of claims that is impaired under the plan has accepted the plan, [which must be] determined without including any acceptance of the plan by any insider.").

Sun Circle's Objections argue in part that Debtor has not obtained the acceptance of an impaired class, thereby preventing confirmation of Debtor's Plan.  Sun Circle contends that neither Class 1 (CCRC) nor Class 4 (the Law Firm) contains impaired claims or interests and thus, pursuant to § 1129(a)(10), are not qualified to vote to accept Debtor's Plan.  Sun Circle argues that because Classes 1 and 4 are not eligible to vote to

---

[14] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, shall be by section number only.

accept Debtor's Plan, the rejection of Debtor's Plan by Classes 2 and 5, containing Sun

Circle's claims and interests, must preclude this Court from confirming Debtor's Plan.

An impaired class's rejection of a proposed plan will not prevent a Chapter 11

debtor from obtaining confirmation as to that class if the Court finds that: (1) the plan

meets all of the requirements of § 1129(a), excepting subsection (8),[15] including

acceptance of the plan by at least one non-insider impaired class; and (2) the debtor is

able to satisfy the requirements of § 1129(b) and effectively cram down confirmation

over an impaired class's rejection.  "As the proponent of the Plan, Debtor bears the

burden of demonstrating by a preponderance of the evidence that the Plan satisfies the

conditions of § 1129," including the requirements of subsection (b) where applicable.  *In

re Pamplico Highway Devel., LLC*, 468 B.R. 783, 789 (Bankr. D.S.C. 2012). Sun Circle

argues that Debtor is unable to satisfy its evidentiary burden for confirmation because:

(1) neither Class 2 nor Class 5, containing Sun Circle's claims and interests, has voted to

accept Debtor's Plan in satisfaction of § 1129(a)(10); (2) Debtor's monthly income is

insufficient to deem the Plan feasible pursuant to § 1129(a)(11); and (3) Debtor's Plan

proposes treatment of Sun Circle's claims in a manner that is not "fair and equitable" in

accordance with § 1129(b).  For these reasons, Sun Circle contends Debtor's Plan cannot

become binding on non-accepting impaired Classes 2 and 5 through cram down

confirmation.

The Court must first address whether Class 1 (CCRC) or Class 4 (the Law Firm),

which each voted to accept Debtor's Plan, qualifies as an impaired class.  If neither Class

1 nor Class 4 qualifies as an impaired class, Debtor will be unable to achieve

---

[15] Section 1129(a)(8) is excluded from this analysis because that subsection requires acceptance of all impaired classes.

confirmation via cram down because Debtor would not meet its burden of satisfying "'the requirement of § 1129(a)(10) for acceptance by a non-insider impaired class.'"  *In re Remington Forest*, C/A No. 95–76068, 1996 WL 33340744, at *12 (Bankr. D.S.C. June 18, 1996) (quoting *In re Deluca*, 194 B.R. 797 (Bankr. E.D. Va. 1996)).

### a.  Whether Class 1, containing only CCRC's tax claims, is an impaired class capable of accepting Debtor's Plan.

For Class 1 to qualify as a class for voting purposes, it must meet two fundamental criteria:

(1) Class 1 must contain a claim which can be classified in accordance with § 1123(a)(1); and

(2) The claim or claims within Class 1 must be "impaired," as defined under § 1124.

### 1.  Whether Class 1 contains a claim which can be classified in accordance with § 1123(a)(1).

The method for classification of claims is discussed in § 1122, which explains that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class."  § 1122(a).  "A debtor 'possesses considerable, but not complete, discretion to classify claims and interests in its Chapter 11 plan of reorganization.'"  *In re Greenwood Point, LP*, 445 B.R. 885, 905 (Bankr. S.D. Ind. 2011) (quoting *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994)). For example, a debtor's discretion is expressly limited by the statutory exclusion from designation as part of a "class" for voting purposes of claims of the types specified in §§ 507(a)(2), 507(a)(3), and, most importantly with regard to the instant case, unsecured priority tax claims as described in § 507(a)(8).  § 1123(a)(1); *see, e.g.*, *In re K*

15

*Lunde, LLC*, 513 B.R. 587, 595–95 (Bankr. D. Colo. 2014) (referencing the statutory exception of §§ 507(a)(2), (3), and (8), holding that "as § 1123(a)(1) is presently written, the Court is constrained to interpret it to require classification of all claims other than the three express exceptions"); *Greenwood*, 445 B.R. at 905–06 (holding that § 1123(a)(1) "prohibit[s], or at the very least, limit[s], a plan proponent from classifying [§] 507(a)(8) *unsecured priority tax claims* . . . but *not* [a] Secured Tax Claim . . . which does not fall under [§] 507(a)(8)") (emphasis in original).  Because each secured creditor is typically different than its counterparts with regard to the property securing their liens and priority, it is not atypical for secured creditors to be separately classified. Therefore, to be an impaired class capable of voting to accept or reject a proposed Chapter 11 plan of reorganization, a creditor's claims or interests must first be designated as part of a "class" in accordance with §§ 1122 and 1123.

Sun Circle asserts that because CCRC is a tax claimant, its legal, equitable, or contractual rights are incapable of being treated as a class for impairment purposes under Debtor's Plan.  *See* § 1124(a)(1) (defining impairment).  Relying on a footnote in *In re Bryson Props., XVIII*, 961 F.2d 496 (4th Cir. 1992)—a case decided prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")—Sun Circle contends that "priority tax claimants, which receive preferential treatment under [§ 1129(a)(9)(C)] . . . are not an impaired class that can accept a plan and bind other truly impaired creditors to a cram down." *Bryson Props.*, 961 F.2d at 501 n.8. The pre-BAPCPA nature of the cited language in the *Bryson Properties* footnote is relevant here due to its express reference to § 1129(a)(9)(C) and the priority treatment that subsection affords specifically and exclusively to § 507(a)(8)

16

*unsecured* priority tax claims which a debtor is prohibited from classifying for voting

purposes. *See* § 1123(a)(1) ("[A] plan shall . . . designate, subject to [§] 1122 of this title,

classes of claims, *other than claims of a kind specified in* . . . [§] 507(a)(8) . . . .").

The footnote in *Bryson Properties* upon which Sun Circle's Supplemental

Objection arguments rely premises its conclusion in part on the bar created by

§ 1123(a)(1) against the classification of § 507(a)(8) unsecured priority tax claims:

> In *In re Perdido Motel Group, Inc.*, 101 B.R. 289 (Bankr.
> N.D. Ala. 1989), the court noted that priority tax claims are
> not designated as a "class" within the definition of
> § 1123(a).  The court held that acceptance of a plan by
> priority tax claimants is not acceptance by a "class" of
> impaired claims under § 1129(a)(10) for purposes of cram
> down.

*Bryson Props.*, 961 F.2d at 501 n.8 (citing *Perdido Motel*, 101 B.R. at 294).[16]

The language in the *Bryson Properties* footnote appears to contemplate *only* § 507(a)(8)

unsecured priority tax claims which are expressly excluded from classification pursuant

to § 1123(a)(1).  *See also In re EQK Bridgeview Plaza, Inc.*, No. 10–37054–SGJ–11,

2011 WL 2458068, at *2 (Bankr. N.D. Tex. June 16, 2011) (noting that the answer to

"whether it is proper to treat a class consisting of secured tax claim(s) as an impaired,

accepting class, . . . may have been different pre-BAPCPA when secured tax claims were

not addressed in [§] 1129(a)(9)(D) . . .") (internal quotation marks omitted); *In re

Sunflower Racing, Inc.*, 219 B.R. 587, 597 (Bankr. D. Kan. 1998) (holding that the class

containing county treasurer's tax claim was entitled to vote on debtor's plan where the

---

[16] Sun Circle argues in its Supplemental Objection adopting the UST's comments from the October 15,
2014 hearing that "[t]here is . . . nothing in the footnote itself which would indicate any differentiation
between various types of tax claims, nor is there any indication that different types of taxes are to be treated
differently in the Code."  This position overlooks the footnote's express reference to § 1123(a)(1)  which
clearly acknowledges one type of tax claim and no others: § 507(a)(8) unsecured priority tax claims.
Additionally, Sun Circle's argument fails to address the significance of the pre-BAPCPA issuance of
*Bryson Properties* and the impact of such timing on the scope of the footnote's analysis.

tax claim was secured by a lien on certain property under debtor's control); *Perdido Motel*, 101 B.R. at 293–94 (finding unsecured priority tax claims to be "impaired," but denying confirmation on the grounds that debtor's plan could not satisfy § 1129(a)(10) because the unsecured tax claims could not be classified for voting purposes pursuant to § 1123). Therefore, the Fourth Circuit's conclusion in the *Bryson Properties* footnote is binding on this Court only insofar as it concerns unsecured priority tax claims which satisfy § 507(a)(8) and are excluded from designation as a class under § 1123(a)(1).

At the time *Bryson Properties* was decided in 1992, the Fourth Circuit did not have before it the considerations implicated by BAPCPA's addition of § 1129(a)(9)(D). While it is true that § 1129(a)(9)(D)—which did not exist in the Code prior to BAPCPA's 2005 enactment—provides for payment of certain secured tax claims in the same manner as *unsecured priority* tax claims, § 1129(a)(9)(D) neither expressly states or passively implies that such equal treatment functions to prohibit the classification of a secured tax claim for purposes of voting and cram down considerations. *See K Lunde*, 513 B.R. at 594–98; *Greenwood*, 445 B.R. at 905–07. Although the amendments to the Code provided by BAPCPA now allow secured tax claims to qualify for *treatment* similar to unsecured priority tax claims, BAPCPA did not alter the language of § 1123(a)(1); secured tax claims are not—and were not at the time of *Bryson Properties*—a type of claim which a debtor was unable to designate as part of a class for voting purposes in accordance with § 1123(a)(1). If in passing and enacting BAPCPA Congress intended to exclude secured tax claims from classification for voting purposes, it would have done so in the same express manner in which claims under §§ 507(a)(2), (3), and (8) were and continue to be statutorily excluded. *See* § 1123(a)(1). Therefore, the undersigned finds

that the plain language of § 1123(a)(1) permits Debtor to separately classify CCRC's secured tax claims, as represented in Class 1 under Debtor's Plan and, in reaching this conclusion, disagrees with the recent holding in *In re Edgefield Inn, LLC*, Case No. 14–01670–DD, 2014 WL 5544079 (Bankr. D.S.C. Oct. 31, 2014) (failing to address § 1123(a)(1) in holding to bar a secured tax claimant from membership in a voting class solely because of its receipt of treatment under § 1129(a)(9)(D)).[17]   Therefore, the Court now turns to the issue of whether Class 1 is impaired.

### 2. Whether CCRC's secured tax claim, as included in Class 1, is "impaired" as defined under § 1124.

"Impairment" is broadly defined.  A class of claims is impaired unless "the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles" its holder. § 1124(a)(1); *see also, e.g.*, *In re The Capital Ctr., LLC*, No. 12–06277–8–SWH, 2013 WL 4510248, at *5 (Bankr. E.D.N.C. Aug. 22, 2013) ("'Congress define[d] impairment in the broadest possible terms.'") (quoting *In re Swartville, LLC*, No. 11–08676–8, 2012 WL 3564171, at *2 (Bankr. E.D.N.C. Aug, 17, 2012) (quoting *In re Madison Hotel Assocs.*, 749 F.2d 410, 418 (7th Cir. 1984) and *In re Taddeo*, 685 F.2d 24, 28 (2d Cir. 1982))).  Section 1124's broad definition of impairment

---

[17] Relying on *Bryson Properties*, another judge in this District in *In re Edgefield Inn, LLC*, Case No. 14–01670–DD, 2014 WL 5544079 (Bankr. D.S.C. Oct. 31, 2014), recently held that a secured tax claim "cannot be a member of a voting class because it receives treatment under § 1129(a)(9)(D)." *Id.* at *4. *Edgefield* further states that "[t]his is true regardless of the tax's secured status because tax claims receiving preferential treatment under § 1129(a)(9) cannot be impaired." *Id.*; *but see, e.g.*, *Swartville*, 11–08676–8, 2012 WL 3564171, at *2; *Greenwood*, 445 B.R. at 905–07.  The rationale in *Edgefield* neglects to acknowledge that only unsecured tax claims entitled to priority under § 507(a)(8) are excluded from classification for voting purposes in accordance with § 1123(a)(1).  The undersigned, in ruling on the present matter, finds it inappropriate to add a fourth type of claims to the three already expressly excluded by Congress in § 1123(a)(1) and, instead, finds it proper only to exclude from classification those claims which the Code itself expressly designates (i.e., §§ 507(a)(2), (3), and (8)).  Additionally, as discussed more fully below, although the enactment of BAPCPA resulted in the provision of similar *treatment* for secured tax claims to that which was, prior to 2005, and still is afforded to § 507(a)(8) claims, *Edgefield* does not address whether the subject plan altered the secured tax claimant's rights in a way other than the manner in which its rights were affected through application of § 1129(a)(9)(D).  Therefore, the undersigned disagrees with the analysis of these issues as presented in *Edgefield* for the reasons set forth herein.

requires a case-by-case, fact-intensive inquiry in which the Court must determine whether

the plan itself, rather than the operation of a provision of the Bankruptcy Code, impairs a

creditor's legal, equitable, or contractual rights.  *See, e.g.*, *In re RAMZ Real Estate Co.*,

510 B.R. 712, 716–17 (Bankr. S.D.N.Y. 2014) (citing *In re Am. Solar King Corp.*, 90

B.R. 808, 819 (Bankr. W.D. Tex. 1988)); *compare Capital Ctr.*, 2013 WL 4510248, at

*6–7 (finding secured property tax claim to be unimpaired where "debtor's treatment of

[secured tax claimant] complies with, and is identical to, that given to secured tax claims

by § 1129(a)(9)(D)") (citing and distinguishing *In re Full Circle Holdings, LLC*, No. 13–

00066–8–JRL (Bankr. E.D.N.C. May 21, 2013) and *Greenwood*, 445 B.R. 885).

The analysis in the instant case begins by recognizing that the Bankruptcy Code

provides that a holder of "a secured claim which would otherwise meet the description of

an unsecured claim of a governmental unit under [§] 507(a)(8), but for the secured status

of that claim," is entitled to receive the same treatment as the holder of an unsecured

priority tax claim.   § 1129(a)(9)(D).   With respect to unsecured tax claims, the Code

provides that such claims which are provided priority status under § 507(a)(8) are entitled

to "regular installment payments in cash . . . of a total value, as of the effective date of the

plan, equal to the allowed amount of such claim" over a period of five years or less and

"in a manner not less favorable than the most favored nonpriority unsecured claim

provided for by the plan . . . ."  § 1129(a)(9)(C).[18]  Additionally, the rate of interest to be

---

[18] In regard to this final element—treatment "in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan"—the Court finds that the treatment proposed under Debtor's Plan to other nonpriority unsecured claims is not more favorable than that which is set forth with respect to CCRC.  While Class 4 contains one unsecured claim in the amount of $500.00 to be paid in one lump sum, the Court finds Debtor's designation of Class 4 to be appropriate in light of the administrative convenience facilitated by such classification.  *See* § 1122(b) (permitting a plan of reorganization to designate a convenience class).  To the extent it may be argued that Class 4 receives treatment more favorable than that which is afforded to other classes**,** the difference in treatment cannot be considered unfairly discriminatory so as to preclude confirmation, especially where the other class has voted to accept

paid on tax claims "shall be the rate determined under applicable nonbankruptcy law."

§ 511(a).  If a debtor's proposed plan of reorganization alters a secured tax claim holder's

rights, other than through treatment in compliance with §§ 1129(a)(9)(D) and 511, the

secured tax claim is impaired.  Thus, the undersigned disagrees with the premise, as set

forth in *Edgefield*, that secured tax claims cannot be impaired simply because the Code

sets forth a course of treatment for such claims in § 1129(a)(9)(D).  *See, e.g.*, *RAMZ Real*

*Estate*, 510 B.R. at 716–17 (distinguishing the *Bryson Properties* footnote and finding a

secured tax claim to be impaired where plan provided treatment in accordance with

§ 1129(a)(9)(D) but failed to comply with § 511 by providing interest to be paid on the

claim at a rate 3% lower than that available to creditor under state tax law); *K Lunde*, 513

B.R. at 597 ("[W]hen a plan merely provides the statutorily prescribed treatment afforded

claims that fall within the purview of § 1129(a)(9)(D), and does not otherwise alter the

secured tax claimant's non-bankruptcy rights, the plan itself is not the source of the

claim's impairment."); *Capital Ctr.*, 2013 WL 4510248, at *6–7; *Swartville*, 11–08676–

8, 2012 WL 3564171, at *2 ("[A]ny alteration of [the creditor's] rights constitutes

impairment, even if the value of the rights is enhanced.") (citing 7 *Collier on Bankruptcy*

¶ 1124.03, at 1124–27 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.));

*Greenwood*, 445 B.R. at 905–07 ("While the proposed payment of the Secured Tax

Claim under the . . . [debtor's p]lan is more favorable than that set forth in

---

the treatment as proposed.  *See, e.g.*, *In re Idearc, Inc.*, 423 B.R. 138, 172–73 (Bankr. N.D. Tex. 2009)
("[T]o the extent the treatment of unsecured [c]onvenience [c]laims . . . could be more favorable than the
treatment of unsecured claims in [a separate class], it is not unfairly discriminatory.").  The separate
classification and treatment of the Law Firm's small claim allows it to "be eliminated early and reduce[s]
the number of claims that would have to be paid over time" under Debtor's Plan.  *In re Leser*, 939 F.2d
669, 671 n.4 (8th Cir. 1991); *see, e.g.*, *Troy Sav. Bank v. Travelers Motor Inn, Inc.*, 215 B.R. 485, 489
(N.D.N.Y. 1997); *K Lunde*, 513 B.R. at 597 (noting that treatment of a convenience class is not to be
considered in comparing treatment of unsecured claims in accordance with § 1129(a)(9)(C)).

[§] 1129(a)(9)(D), it still alters the payment rights of the . . . County Treasurer with respect to its claim.").

In the instant case, Debtor's Plan treats CCRC's tax claims within Class 1 in accordance with § 1129(a)(9)(C) and (D): "Debtor proposes that [CCRC's] claim will be paid pursuant to Class 1 in equal monthly installments" which "shall be paid over a period not exceeding five years from the date of the order of relief."[19]   However, Debtor's Plan does not appear to comply with § 511(a), as monthly payments to Class 1 will include "interest at the rate of 4.5%," which is different from the rate of interest available to CCRC on the secured portion of its claim under nonbankruptcy law.  *See* § 511(a).  According to South Carolina law—the body of nonbankruptcy law applicable to CCRC's claim—no interest is collected on unpaid taxes absent the issuance of a money decree or judgment in favor of the collecting body.  *See* S.C. Code Ann. § 12–45–180 (1976); S.C. Code Ann. § 34–31–20(B) (Supp. 2013).[20]   Instead, South Carolina law provides for the collection of penalties, rather than ongoing interest, on unpaid business personal taxes such as those listed as owed by Debtor in CCRC's Proof of Claim.  *See* S.C. Code Ann.  § 12–45–180 (1976).  As a result of Debtor's pre-petition nonpayment and but for Debtor's bankruptcy filing, South Carolina tax law permits the county auditor

---

[19] The Plan's proposed treatment of the unsecured portion of CCRC's claim is irrelevant in this context in light of the Court's conclusion that only the secured tax claim of CCRC can be classified for voting purposes.  Solicitation of votes from unimpaired claims is not required.  *See* § 1123(a)(2); § 1126(f); *see also K Lunde*, 513 B.R at 595 n.5.  Further discussion on impairment will not involve reference to the unsecured portion of CCRC's claim.  As noted above, CCRC filed a Proof of Claim in the amount of $6,911.85 and asserts entitlement to secured status in the amount of $1,902.66 and priority status for the unsecured amount of $5,099.19;  § 1129(a)(9)(D) pertains to the treatment of the former and § 1129(a)(9)(C) to the latter.

[20] In the event CCRC obtained a judgment against Debtor for its outstanding tax debt, South Carolina law provides that the legal rate of interest on judgments "shall be the first prime rate as published in the first edition of the Wall Street Journal . . . plus four percentage points."  S.C. Code Ann. § 34–31–20(B) (Supp. 2013).  Per the Supreme Court of South Carolina's annual order confirming this rate, "for the period January 15, 2014, through January 14, 2015, the legal rate of interest for judgments . . . is 7.25% compounded annually."  Order, *Interest Rate on Money Decrees & Judgments* (S.C. Jan. 3, 2014), *available at* http://www.sccourts.org/whatsnew/displayWhatsNew.cfm?indexID=908.

to assess a total penalty of 15% of the original amount owed, to be collected by the county treasurer along with the unpaid tax amount. *Id.* at (A). Considering all of the above, it is clear under these facts that CCRC's secured tax claim is impaired as a result of the Plan's proposed treatment which alters CCRC's rights by preventing the collection of the penalty to which it is statutorily entitled under S.C. Code Ann. § 12–45–180(A).

Furthermore, the Court finds Sun Circle's argument that CCRC's acceptance of Debtor's Plan somehow detracts from or extinguishes the impairment of CCRC's interest and thereby prevents confirmation to be without merit. A proposed plan's compliance with § 1129(a)(9)(C) and (D) is a precondition to confirmation "[e]xcept to the extent that the holder of a particular claim has agreed to a different treatment . . . ." § 1129(a)(9). "[A]cceptance by a secured creditor does not mean that creditor's claim is not impaired . . . ." *Greenwood*, 445 B.R. at 907; *see also K Lunde*, 513 B.R. at 595 n.5 (citing §§ 1123(a)(2) and 1126(f)); § 1129(a)(9); *but see In re Mangia Pizza Investments, LP*, 480 B.R. 669, 678–79 (Bankr. W.D. Tex. 2012). Thus, a secured tax claimant's acceptance of plan treatment which impairs its legal, equitable, or contractual rights and does not comport with § 1129(a)(9)(C) and/or (D) will not preclude confirmation. In fact, the Code expressly recognizes a creditor's right to accept non-conforming treatment. *See* § 1129(a)(9). Because Debtor's Plan does not leave unaltered CCRC's legal rights, Class 1 is an impaired accepting class and its ballot cast by CCRC, its sole member, in favor of Debtor's Plan serves to satisfy § 1129(a)(10). This conclusion is consistent with the rationale utilized in a significant number of recent cases which examine the plain meaning of the Bankruptcy Code in relation to the classification and impairment of secured tax claims for voting purposes.

For the above-stated reasons, the undersigned finds that CCRC's secured tax claim is properly classified within Debtor's Plan and, upon a fact-intensive review of the Plan's proposed treatment, further concludes that Class 1 is a non-insider[21] impaired class of claims in accordance with § 1124(a)(1). Therefore, it is unnecessary to presently visit the same question as to Class 4 (the Law Firm). The ballot cast by CCRC indicating acceptance of Debtor's Plan is sufficient to satisfy § 1129(a)(10). The Court now turns to addressing Sun Circle's arguments as to the feasibility of Debtor's Plan under § 1129(a)(11).

**b. Whether Debtor's Plan is feasible in accordance with § 1129(a)(11).**

Section 1129(a)(11) states that the Court "shall confirm a plan only if . . . [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan." § 1129(a)(11). Sun Circle argues that despite Debtor's expectations of the Plan's success, Debtor's proposed payments are not feasible and further reorganization is likely needed. Specifically, Sun Circle contends that Debtor's projected monthly income is insufficient to cover the total proposed monthly payments to creditors under the Plan. Further, Sun Circle asserts that Debtor's projections of increased membership, which Debtor claims will result in an increase in giving units, is no more than a speculative estimation which the Court should not view as evidence in support of confirmation.

---

[21] The term "insider" is defined in § 101(31). Sun Circle has not alleged that CCRC is an insider nor did the Court's independent review of the record indicate that CCRC would meet the Code's definition of the term. Therefore, the Court need not explore the issue within this Order. Although Sun Circle has alleged the Law Firm to be an insider, for reasons stated herein such an allegation does not prevent the Court from finding that Debtor has met its evidentiary burden in relation to § 1129(a)(10).

The feasibility standard under § 1129(a)(11) "is whether the [P]lan offers a reasonable assurance of success.  Success need not be guaranteed." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988); *see, e.g.*, *In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir. 1985); *Pookrum v. Bank of Am., N.A.*, 512 B.R. 781, 788 (D. Md. 2014); *In re Walker*, 165 B.R. 994, 1004 (E.D. Va. 1994); *In re Om Shivai, Inc.*, 447 B.R. 459, 462 (Bankr. D.S.C. 2011).  In analyzing feasibility, certain factors courts have considered include: "the adequacy of the capital structure; the earning power of the business; economic conditions; the ability of management; the probability of the continuation of the same of management; and any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan." *In re Guilford Telecasters, Inc.*, 128 B.R. 622, 627 (Bankr. M.D.N.C. 1991) (citing *In re U.S. Truck Co.,* 800 F.2d 581 (6th Cir.1986), *In re Clarkson,* 767 F.2d 417 (8th Cir.1985), and *In re Lakeside Global II Ltd.*, 116 B.R. 499 (Bankr. S.D. Tex. 1989)).   In this way, feasibility, like impairment, must be considered through a case-by-case, fact-intensive inquiry.

In the instant case, as stated in Debtor's approved Disclosure Statement, the following will serve as its funding sources for proposed Plan payments:

> [T]ithes, offerings, net profit from the day care and summer camp, and billboard revenues[;] . . . fund-raising activities that will generate additional revenues[;] . . . commitments, above and beyond tithes and offerings, for contributions totaling $20,000[.00] . . . made in response to a call for monies to assist in reducing the obligation owed to Sun Circle[;] . . . an increase in membership which will increase regular tithes . . . derived from the new neighborhoods within the proximity of the new [Myrtle Beach church] locations[;] . . . the proposed sale of the billboard lease[;] . . . the prospect of selling the remaining billboard panel to generate additional revenues[; and] . . . a 10% increase in

> membership [at the North Charleston church] . . .
> generat[ing] an additional $1,040[.00] in revenues on a
> monthly basis.

Debtor's operations in bankruptcy have shown a growth in its income sources through the proposed sale of the billboard lease (hindered now only by Sun Circle's refusal to execute the Non-Disturbance Agreement), forthcoming sale of the Otranto Property resulting in a sizeable equity realization,[22] positive projections of membership growth, and revenues from new programs.  Therefore, the Court finds that Debtor's Plan offers a reasonable assurance of success without the need for further reorganization subsequent to confirmation.  *See In re Cheatham*, 91 B.R. 377, 380 (E.D.N.C. 1988) ("While no doubt exists that a plan must be mathematically *possible*, there is no requirement that it be mathematically certain.") (emphasis added).  Debtor's average net monthly income as stated in the Disclosure Statement does not include any increases in revenues due to membership growth, the likelihood of which is supported by historical figures supplied by Debtor.  Furthermore, Debtor's approved Disclosure Statement and reports filed in recent months reflect a balance of funds on hand that Debtor may access to supplement Plan payments in the unlikely event that membership does not increase.[23]  Thus, the Court disagrees with Sun Circle's position that Debtor's Plan cannot be confirmed on the grounds of feasibility.  Therefore, the Court now turns to determine whether Debtor is

---

[22] There is no requirement within the Code requiring Debtor to sell the Otranto Property and immediately pay to Sun Circle a large lump sum of $250,000.00 from the sale proceeds.  In an alternative plan of reorganization, Debtor could elect not to pay this secured creditor the lump sum amount derived from the sale proceeds, but instead use the proceeds to make periodic payments to its creditors over time.  In the absence of an authority requiring Debtor to tender the proposed payment, it is clear to the Court that Debtor is making considerable efforts to reorganize through its Plan and satisfy Sun Circle's claims without the need for further reorganization subsequent to confirmation.

[23] Debtor's actions prior to confirmation also offer support for its position that the proposed Plan is feasible; Sun Circle has received monthly adequate protection payments of $3,400.00 in accordance with the consent order settling Sun Circle's motion for relief from stay and Debtor, as agreed in the same consent order, has tendered to Sun Circle a lump sum of $20,000.00.

able to satisfy the cram down requirements of § 1129(b), allowing its Plan to be confirmed over Sun Circle's Objections.

### c. Whether Debtor's proposed Plan is "fair and equitable" in accordance with § 1129(b) and, therefore, capable of confirmation via cram down.

Pursuant to § 1129(b), if all applicable requirements of § 1129(a) are met,[24] a plan may be confirmed if it does not discriminate unfairly and is fair and equitable with respect to each non-accepting impaired class. *Pamplico*, 468 B.R. at 789. Sun Circle does not allege that Debtor's proposed Plan discriminates unfairly, but takes the position that Debtor's Plan is not fair and equitable with regard to Classes 2 and 5, the non-accepting impaired classes containing Sun Circle's claims and interests. Specifically, in Sun Circle's August 4, 2014 and September 16, 2014 objections, it argues that Debtor's plan, prior to its amendment via the October 15, 2014 addendum, was not fair and equitable because of the following terms regarding treatment of Sun Circle's claims: (1) an interest rate of 4.5% to be paid on its secured claim, which is 1.05% less than the interest rate agreed upon in the original Note; (2) elimination of the payment of any interest on its unsecured claim; (3) repayment of its secured claim and unsecured claim to be completed within twenty-five years and fifteen years, respectively, despite the Note's terms requiring final payment by November 2014; (4) monthly payments to Sun Circle in the amount of $3,400.00, a figure Sun Circle contends was selected because it represents only slightly less than the amount of interest that will accrue on the claims each month, thereby preventing Debtor's payment schedule from being a negative amortization; and (5) absence of any allocations for maintenance and upkeep of the North Charleston property securing Sun Circle's interest. These particular issues with Debtor's Plan, as

---

[24] As previously stated, a debtor may achieve confirmation via cram down without proving satisfaction of §1129(a)(8).

amended by the October 15th addendum, were not raised in Sun Circle's Supplemental

Objection filed on November 10, 2014, presumably in light of the addendum's terms, as

stated in the Findings of Fact above, as well as testimony offered by Pastor Green at the

October 15, 2014 hearing relating to volunteers and ongoing contracts, the services from

which aid in the maintenance and upkeep of the North Charleston property.[25]  Debtor's

Plan as it is presently before the Court substantially improves Sun Circle's treatment

from that which was proposed under prior proposed plans by including an increase of the

interest to be paid up to the Note's agreed-upon rate of 5.55%, monthly payments to Sun

Circle of $3,968.00, a shorter repayment period for the secured portion of Sun Circle's

claim, a proposed lump sum payment of $250,000.00 to Sun Circle upon the sale of

Debtor's Otranto Property, and payment of another lump sum of $38,000.00 to Sun

Circle upon consummation of the billboard lease sale, which currently cannot be

completed due to Sun Circle's decision to withhold its assent to the Non-Disturbance

Agreement.

"The fair and equitable requirement is satisfied if the [secured] claimholder

retains its lien and receives deferred cash payments totaling at least the allowed amount

of such claim, of a value, as of the effective date of the plan, of at least the value of the

claimholder's interest in the estate's interest in such property." *Pamplico*, 468 B.R. at

789 (internal quotation marks omitted); *see also* § 1129(b)(2)(A)(i)(I)–(II).  "With respect

to a class of unsecured claims . . . the plan [must] provide[] that each holder of a claim of

such class receive or retain on account of such claim property of a value, as of the

---

[25] Considering the absence of any discussion whatsoever of the "fair and equitable" nature of Debtor's Plan in Sun Circle's Supplemental Objection, it would not be improper for the Court to deem these issues abandoned.  Nonetheless, the arguments will be addressed below.

effective date of the plan, equal to the allowed amount of such claim . . . ."
§ 1129(b)(2)(B)(i).

Class 2 contains the secured portion of Sun Circle's claim, which is governed by
§ 1129(b)(2)(A).   Debtor's Plan does not extinguish Sun Circle's lien; instead, it
expressly states the value of Sun Circle's lien[26] which, at the very least, implies that
Debtor intends for Sun Circle to retain its lien under the Plan.  Furthermore, the consent
settlement order which resolved Sun Circle's earlier motion for relief from stay granted
Sun Circle an additional replacement lien on Debtor's N. Charleston Property.
Therefore, under Debtor's Plan, Sun Circle maintains its status as a secured creditor and
its interest is sufficiently protected.   Class 5 contains the unsecured portion of Sun
Circle's claim, which is governed by § 1129(b)(2)(B).   Debtor's proposed treatment of
Class 5 will result in full payment of Sun Circle's unsecured claim.  Sun Circle's grounds
for its objection to the treatment of Class 5 are that (1) Sun Circle will not receive any
payment on the *interest* owed on the undersecured portion of its claim; and (2) repayment
is not expected to be completed until fifteen years after confirmation.  The non-payment
of interest and extended repayment of the total amount of Sun Circle's unsecured claim
are not violative of § 1129(b)(2)(B).  Sun Circle agrees that the terms of the Plan are
commercially reasonable and in accordance with its own witness's testimony.  The Court
also agrees.  Sun Circle's first and second objections repeatedly state that the primary
issues with Debtor's Plan to be that Sun Circle will receive treatment under the Plan
which is less favorable than the original terms of the Note.  If Sun Circle were to be
afforded the same treatment to which it would be entitled under the Note outside of

---

[26] Notably, the value stated in the Plan is $170,000.00 *higher* than the value attributed to the N. Charleston
Property in Sun Circle's Proof of Claim.

bankruptcy, Sun Circle's claims, as reflected in Class 2 and Class 5, would not be impaired. *See* § 1124(a)(1) (defining impairment). Absent impairment, neither Class 2 nor Class 5 would be entitled to vote to accept or reject Debtor's Plan. It is only because of this impairment that Sun Circle is capable of bringing its arguments against confirmation before this Court. It is clear that the Bankruptcy Code anticipates that reorganizations under Chapter 11 will often result in secured and unsecured creditors alike receiving treatment different from that originally agreed upon by the bankrupt debtor and its creditors. In the instant case, the Court finds that Debtor's Plan satisfies the fair and equitable requirement of § 1129(b)(2) and, therefore, should be confirmed over Sun Circle's Objections.

## II.    Debtor's Motion to Compel Sun Circle

Debtor requests that this Court order Sun Circle to execute the Non-Disturbance Agreement, discussed above, thereby allowing for consummation of the sale of the billboard lease and payment of $38,000.00 to Sun Circle as provided by the Sale Order. According to Debtor, Sun Circle lacks any good faith basis for its resistance to signing the Non-Disturbance Agreement and merely desires to defeat confirmation in order to recover the N. Charleston Property. The Court agrees. Sun Circle's primary objection to signing the Non-Disturbance Agreement appears to rest within its belief that Debtor's Plan cannot be confirmed, thus ultimately allowing for Sun Circle to immediately foreclose upon the N. Charleston Property.[27] In light of the Court's finding that Debtor's Plan should be confirmed over Sun Circle's Objections, the basis for Sun Circle's resistance to the Sale Order and Non-Disturbance Agreement deteriorates. Nonetheless,

---

[27] Upon foreclosure, the existence of the completed Non-Disturbance Agreement may prevent Sun Circle from extinguishing Landmark's interest in the billboard.

the Court declines to grant Debtor's Motion to Compel at this time.  Although the Court

is not persuaded to presently require Sun Circle to sign the Non-Disturbance

Agreement,[28] it must be noted that in the event Sun Circle's continued refusal to assent to

the Non-Disturbance Agreement results in Debtor's inability to consummate the sale, Sun

Circle will be considered to have effectively forfeited its right to demand the lump sum

payment of $38,000.00 derived from the sale, as proposed under the Plan and

contemplated by the Sale Order.  Additionally, Sun Circle could be found to be estopped

from declaring Debtor in default under the Plan, as confirmed by this Order, due to

Debtor's inability to tender the $38,000.00 sum.

## CONCLUSION

Rejection of Debtor's proposed Plan by Classes 2 and 5, both of which contain

Sun Circle's impaired claims, does not prevent Debtor from obtaining Plan confirmation

in light of the Court's findings as stated above. Debtor's Plan, as amended by the October

15, 2014 addendum, meets all of the applicable requirements of § 1129(a), including

acceptance of the Plan by Class 1, containing the non-insider impaired claims of CCRC,

in satisfaction of § 1129(a)(10). Additionally, the Court finds that Debtor's Plan is

feasible and offers a reasonable assurance of success without a need for further

reorganization as required by § 1129(a)(11).  Furthermore, Debtor's Plan is fair and

equitable in satisfaction of § 1129(b), thus allowing for confirmation over Sun Circle's

---

[28] Although an objection deadline was not set for Debtor's Motion to Compel, Sun Circle did have notice of and the opportunity to object to Debtor's Motion to Sell the billboard easement; Sun Circle did not object to the Motion to Sell.  While it is now clear that Landmark requires the execution of the Non-Disturbance Agreement to consummate the sale, neither Debtor's Motion to Sell nor the Court's Sale Order made mention of the Agreement or the necessity of Sun Circle's assent to its terms.  Absent the opportunity to object to the requirement of the Non-Disturbance Agreement in advance of the Court's approval of the sale, it would be unfair to compel Sun Circle to provide its assent based upon the Court's prior Sale Order.

Objections.   Therefore, Sun Circle's Objections to confirmation of Debtor's Plan are hereby overruled. Debtor's Plan is hereby **CONFIRMED**.

Additionally, for the reasons set forth above, Debtor's Motion to Compel is hereby **DENIED** at this time, without prejudice.   Although the Court denies Debtor's request for an order compelling Sun Circle's assent to the Non-Disturbance Agreement at this time, Sun Circle is hereby prohibited from declaring Debtor in default under the terms of the confirmed Plan and the Sale Order upon failure by Debtor to tender the proposed portion of the sale price to Sun Circle in the event such failure arises from Sun Circle's refusal to execute the Agreement.

**AND IT IS SO ORDERED.**